**Iolet A. NEVE, Appellant,**

v.

**INSALACO's n/k/a Bilo Foods, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2000.

Filed March 7, 2001.

Reargument Denied May 11, 2001.

Scott B. Bennett, Honesdale, for appellant.

William T. Finnegan, Kingston, for appellee.

Before McEWEN, P.J., TODD and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 Appellant, Violet A. Neve, appeals from an order denying her motion to remove the compulsory nonsuit entered by the trial court, which concluded that Appellant could not invoke *res ipsa loquitor* to establish negligence. Because the court evaluated the evidence under a standard that was inappropriately critical in the compulsory nonsuit context, we conclude that the court erred. Therefore, we reverse and remove the nonsuit.

¶ 2 At trial, the testimony of Appellant and her friend, Jan Black, revealed the following facts. On April 3, 1996, Appellant and Ms. Black went shopping together at a grocery store operated by Appellee, Insalaco's. (N.T., 11/22/99, at 24). As the women proceeded down the frozen foods aisle of the store, Ms. Black walked ahead to look in the ice cream case, leaving Appellant approximately 10 feet behind with the shopping cart that the pair were sharing. (*Id.* at 42, 59). Ms. Black turned around toward her shopping companion just in time to see Appellant step on a round metal grate that was raised between one half to three quarters of an inch above the floor. (*Id.* at 59–60). Ms. Black attempted to warn her friend, but Appellant did not hear the warning in time to avoid stepping on the grate. (*Id.* at 60). The arch of Appellant's foot came down on the grate's raised edge, causing Appellant to feel a snapping sensation and a sharp pain in her foot that made her cry out. (*Id.* at 27, 61). At that moment, Appellant became unable to stand on her own and steadied herself by leaning on the shopping cart with the assistance of Ms. Black, who had rushed to Appellant's aid. (*Id.* at 27–28, 61).

¶ 3 At trial, Appellant also presented the expert testimony of an architect, who opined that a grate raised over one quarter of an inch above the floor would present a danger commensurate with the account of the accident. (*Id.* at 92). Appellant next presented the testimony of an employee of the plumbing company, Penn Traffic, which installed the "clean out" system, of which the grate is a part. He stated that the system "provides access to the sewer system in case there is a blockage" and that to flush the system the grate would be raised approximately one half to three quarters of an inch. (*Id.* at 131, 141–42). Finally, Appellant presented the testimony of an employee of the defendant supermarket, who testified that the frozen food case near the accident had recently suffered leakage

---

* Retired Justice assigned to Superior Court.

and that multiple toilets in the store were backed up in the days preceding the incident. (*Id.* at 159–61). Appellant reports that physicians subsequently diagnosed an injury to the posterior tibial tendon of her foot, and that she suffered pain and difficulty walking that persisted at the time of trial. (*Id.* at 36).[1]

¶ 4 Because the above-described evidence does not prove how the grate came to be in a raised position, Appellant sought to invoke the doctrine of *res ipsa loquitor.* The trial court found, however, that Appellant had failed to exclude other potentially responsible causes for the raised position of the grate, and that *res ipsa loquitur* was therefore unavailable to her under the Restatement (Second) of Torts § 328D(1)(b). (Trial Ct.Op. at 4). Since Appellant could not prove causation without *res ipsa loquitor,* the court held that Appellant could not establish a *prima facie* case, and entered a compulsory nonsuit. Thereafter, Appellant filed a motion to remove the nonsuit, which the court denied. This appeal followed.

█ ¶ 5 It is well established that a trial court may enter a compulsory nonsuit only if the plaintiff cannot recover under any view of the evidence. *Hightower–Warren v. Silk,* 548 Pa. 459, 698 A.2d 52, 54 (1997). Similarly, on appeal from a compulsory nonsuit the plaintiff is entitled to a favorable estimation of her evidence and all reasonable inferences therefrom. *Lonsdale v. Joseph Horne Co.,* 403 Pa.Super. 12, 587 A.2d 810, 811 (1991). Thus, we must determine whether the evidence, if believed and afforded its most favorable estimation, could have supported a verdict for the plaintiff. *Id.* With these standards in mind, we turn to the instant case.

¶ 6 Here, Appellant argues that her evidence established the following: maintenance of the drainage system was in the supermarket's exclusive control; the supermarket's agents knew the technique necessary to unscrew the grate; and the supermarket had reason to unscrew the grate because of backed up plumbing and a leaking nearby freezer. (Appellant's Brief at 14–15). In response, Appellee argues that Appellant "failed to address the numerous customers, vendors and others who frequented [the] store" as possible causes for the raised position of the grate. (Appellee's Brief at 9).

█ ¶ 7 As a preliminary matter we note that when a patron suffers an injury in a store from a transitory danger, *res ipsa loquitor* does not apply. The caselaw reveals two discrete types of situations involving such transitory dangers: (1) those in which a patron slipped on debris; and (2) those in which a patron was struck by falling goods that had been stacked properly for display. *Dougherty v. Great Atlantic & Pacific Tea Co.,* 221 Pa.Super. 221, 289 A.2d 747, 748 (1972) (falling jar of olives struck plaintiff); *Cohen v. Penn Fruit Co.,* 192 Pa.Super. 244, 159 A.2d 558, 560 (1960) (falling can of fruit struck plaintiff); *Jones v. Sanitary Market Co.,* 185 Pa.Super. 163, 137 A.2d 859, 860 (1958) (plaintiff slipped on banana peel); *DeClerico v. Gimbel Bros.,* 160 Pa.Super. 197, 50 A.2d 716, 717 (1947) (plaintiff slipped on soft substance). In sum, *res ipsa loquitor* does not apply to prove the negligence of shopkeepers in slip and fall debris cases and cases in which properly stacked items fall on patrons, because shopkeepers cannot be charged with notice of transitory dangers that can materialize a split second before an injury occurs. *Moultrey v.*

---

1. We note that the trial court entered a compulsory nonsuit based *solely on the issue of* causation. To recover, Appellant must still prove that she suffered compensable damages.

*Great A & P Tea, Co.,* 281 Pa.Super. 525, 422 A.2d 593, 596 (1980); *Dougherty, supra.*

■ ¶ 8 However, when a patron suffers an injury in a store from a defect that compromises the safety of the building itself, *res ipsa loquitor* can apply. For example, in *D'Ardenne v. Strawbridge & Clothier, Inc.,* 712 A.2d 318 (Pa.Super.1998), a patron's shoe became caught in a store escalator, causing serious injury. *Id.* at 320. Similarly, in *Lonsdale, supra,* a bathroom faucet handle spun violently, injuring a patron's hand. *Id.* at 812.[2] *See also Hartigan v. Clark,* 401 Pa. 594, 165 A.2d 647, 652 (Pa.1960) (patron tripped on raised metal strip on stair). In each of these cases, a defect in the building or its fixtures established the applicability of *res ipsa loquitor* as a theory to demonstrate negligence.[3]

¶ 9 In the instant case, the raised grate constituted a defect in the building, rather than a transitory defect like a spill. Thus, *res ipsa loquitor* was a potential negligence theory, and we must examine whether the trial court should have permitted Appellant to invoke the doctrine.

■ ¶ 10 Appellant was, of course, a business invitee of the defendant super-market. The Restatement (Second) of Torts § 343[4] defines the duty that a possessor of property owes to a business invitee as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

It does not follow from § 343, however, that the proprietor of a store is an insurer of its patrons. *Zito v. Merit Outlet Stores,* 436 Pa.Super. 213, 647 A.2d 573, 574–75 (1994). Neither the mere existence of a harmful condition in a store nor the mere happening of an accident due to such a condition evidences a breach of the proprietor's duty of care or raises a presumption of negligence. *Id.* at 575 (citing *Moultrey*

---

**2.** *Accord Angelelli v. Albert J. Mansmann Co.,* 168 Pa.Super. 275, 77 A.2d 678, 678–79 (1951) (patron caught toe of shoe on "loose stripping" on stair and fell). In *Angelelli,* the plaintiff alleged the store had constructive notice of the condition. *Id.* at 679. We disagreed, noting that the stairs were in continual use and that the plaintiff failed to establish that the dangerous condition existed for sufficient time to charge the defendant store with knowledge. *Id. Angelelli* is distinguishable in that another patron could have loosened the strip a moment before the plaintiff tripped, unlike the defects in the escalator and drainage cover, which were not caused by patrons and likely existed for longer periods.

**3.** In *Lonsdale,* the plaintiff was unable to establish the second prong of the Restatement (Second) of Torts § 328D(1) concerning *res ipsa loquitor, i.e.,* to eliminate the possibility that a third party was responsible for the dangerous condition of the faucet. *Lonsdale, supra* at 815–16. Thus, although the doctrine was available in theory, it did not apply. We note that this does not diminish the precedential value of *Lonsdale* here because the preliminary question of whether *res ipsa loquitor* is available in a certain factual scenario is altogether separate from the subsequent question of whether a plaintiff proves the three prongs of § 328D(1) necessary to invoke the doctrine. *See, infra.*

**4.** Section 343 has been cited with approval in this jurisdiction. *See, e.g., Lonsdale, supra* at 813; *Winkler v. Seven Springs Farm,* 240 Pa.Super. 641, 359 A.2d 440, 442 (1976).

*v. Great A & P Tea Co., supra* at 596). Rather, an invitee must present evidence proving that the proprietor deviated from the duty of reasonable care that it owed in the circumstances, *i.e.*, that the proprietor knew or in the exercise of reasonable care should have known of the harmful condition. *Zito, supra.* The invitee can satisfy this burden by establishing, *inter alia*, that the proprietor had constructive notice of the harmful condition. *Id.*[5]

¶ 11 "What constitutes constructive notice must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." *Rogers v. Horn & Hardart Baking Co.*, 183 Pa.Super. 83, 127 A.2d 762, 764 (1956). The relative durability of the defect comprises a related factor. For example, in *Rogers, supra.* we held that spilt soup on the floor was too transitory a condition to charge the defendant with notice. *Id.* at 764. Much differently, in *Hartigan, supra,* our Supreme Court held that a store patron who tripped on a raised metal strip on a stair could charge the proprietor with notice because of the durability of the condition, if a witness saw the defect immediately thereafter. *Id.* at 652.

¶ 12 In sum, to charge a defendant store with constructive notice of a harmful condition a plaintiff need not produce positive testimony as to how long the defect existed if: (1) the defect is of a type with an inherently sustained duration, as opposed to a transitory spill which could have occurred an instant before the accident; and (2) a witness saw the defect immediately before or after the accident. *Hartigan, supra* at 652; *Stais v. Sears, Roebuck & Co.*, 174 Pa.Super. 498, 102 A.2d 204, 206 (1954); *DeClerico, supra* at 717.

¶ 13 In addition to implicating constructive notice, the durability of a dangerous condition also implicates *res ipsa loquitor*, which is a related doctrine of circumstantial evidence that permits the factfinder to make reasonable inferences to establish relevant facts. *D'Ardenne, supra*, at 320. "In its purest form, [w]here there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury, the doctrine applies." *Id.* at 320–21. Thus, we turn to the evidence presented in the instant case to determine whether *res ipsa loquitor* is available to Appellant.

¶ 14 Viewing the evidence in the light most favorable to Appellant, as we must, we conclude that a jury could make the following findings. First, the raised metal grate constituted a more durable defect than a spill or piece of fruit on the floor, and therefore compromised the safety of the building itself. *D'Ardenne, supra; Lonsdale, supra.* Second, the defect, *i.e.*, the raised grate, was present and visible at the time of the accident. *Hartigan, supra.* Third, the grate had been deliberately raised to drain the leakage from the freezer or to drain the backed up toilets.

¶ 15 These findings would provide adequate circumstantial evidence to establish that the negligence of the defendant supermarket, or the plumbing company that it hired, provides the most plausible explanation for Appellant's injury. *D'Ardenne, supra; see also Miller v. Peter J. Schmitt & Co., Inc.*, 405 Pa.Super. 502, 592 A.2d 1324, 1328 (1991) (holding storekeeper has duty to exercise reasonable supervision over independent contractor and protect

---

**5.** The invitee can also satisfy its burden by establishing that the proprietor helped to create the harmful condition or had actual notice of it. *Id.*

patrons from foreseeable related hazards). Thus, the doctrine of *res ipsa loquitor* is available to Appellant, at least in theory.

¶ 16 The subsequent question remains, however, whether Appellant can invoke *res ipsa loquitor*, in fact. To make this determination, we must consider whether Appellant's evidence satisfies the requirements of § 328D(1) of the Restatement (Second) of Torts.[6] That section provides:

> It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
> > the event is of a kind which ordinarily does not occur in the absence of negligence;
> >
> > other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> >
> > the indicated negligence is within the scope of the defendant's duty to the plaintiff.

In *Lonsdale, supra*, we held that although *res ipsa loquitor* was available in theory, the plaintiff could not invoke the doctrine because she failed to exclude the possibility that a third party caused the defect in the faucet which injured her hand. *Id.* at 815–16. In the instant case, the trial court reached the same conclusion, *i.e.*, that Appellant failed to satisfy § 328D(1)(b) by excluding other potentially responsible causes for the raised position of the grate. (Trial Ct.Op. at 4).

¶ 17 We disagree. Unlike the restroom faucet in *Lonsdale*, which is used by store patrons continuously, the metal grate in the instant case is never so used. In fact, the installer of the drainage system testified that it would require at least a 14–inch wrench to open the grate, effectively elimi-

nating the possibility that a patron tampered with it. (N.T., 11/22/99, at 145).

¶ 18 We note also that, although a person is normally responsible to observe visible dangers, proprietors must anticipate that store patrons will be distracted by displays designed to attract their attention. *Zito, supra* at 575 (holding that plaintiff who was distracted by nearby display and did not see descending ramp could recover). Appellant testified that her attention was focused on the frozen food display toward which she was walking. (N.T., 11/22/99, at 26). Since part of the supermarket's duty was to anticipate that eye level distractions of shopping would divert the attention of its invitees from the floor, Appellant's recovery is not prohibited merely because the elevation of the grate was visible. *Zito, supra*.

¶ 19 Once again viewing the testimony in the light most favorable to Appellant, as we must, we find that the evidence sufficiently eliminates other responsible causes for the raised position of the grate, including the conduct of Appellant and third persons. Therefore, Appellant can, in fact, invoke *res ipsa loquitor* to establish the supermarket's negligence.

¶ 20 Because *res ipsa loquitor* is available to Appellant, both in theory and in fact, the nonsuit was entered in error and must be removed.

¶ 21 Order reversed. Remanded for trial.

---

6. This section was adopted by our Supreme Court in *Gilbert v. Korvette*, 457 Pa. 602, 327 A.2d 94 (1974).